# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| WILLIAM O. CAMPBELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:19-cv-00559-MHH-SGC |
| | ) | |
| FRANK WILLIAMSON, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

The plaintiff, William O. Campbell, has filed a *pro se* second amended complaint pursuant to 42 U.S.C. § 1983, alleging violations of his rights under the Constitution or laws of the United States. (Doc. 16).[1] The second amended complaint names the following defendants: Colbert County, Alabama; Colbert County Commission; Colbert County Sheriff Frank Williamson[2]; "Jailer Mike"; "Jailer Marcus"; Chief Setlift; Captain Higginbaugh; Colbert County Medical Supplier; Nurse Darce; John Doe, M.D.; and Attorney John McKvey. (*Id.* at 3-4). Campbell seeks declaratory, injunctive, and monetary relief. (*Id.* at 13, 18-19). In accordance with usual practices and 28 U.S.C. § 636(b)(1), the court referred the second amended complaint to the undersigned magistrate judge for a preliminary

---

[1] Citations to the record in the instant case refer to the document and page numbers assigned by the court's CM-ECF electronic filing system, and appear in the following format: (Doc. _ at _).

[2] The second amended complaint misidentifies Williamson as "Frank Williams." (Doc. 16 at 3).

report and recommendation.  *See McCarthy v. Bronson*, 500 U.S. 136 (1991).  As explained below, the plaintiff's claims are due to be dismissed, except those against Higginbaugh and Setlift concerning conditions of confinement.

## I.    STANDARD OF REVIEW

The Prison Litigation Reform Act, as partially codified at 28 U.S.C. § 1915A, requires this court to screen complaints filed by prisoners against government officers or employees.  The court must dismiss the complaint or any portion thereof that it finds frivolous, malicious, seeks monetary damages from a defendant immune from monetary relief, or does not state a claim upon which relief can be granted.  *Id.*  Moreover, the court may *sua sponte* dismiss a prisoner's complaint prior to service.  *See* 28 U.S.C. § 1915A(a).

Under § 1915A(b)(1) and § 1915(e)(2)(B)(i), the court may dismiss a claim as "frivolous where it lacks an arguable basis in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  A claim is frivolous as a matter of law where the defendants are immune from suit or the claim seeks to enforce a legal right that clearly does not exist.  *Id*. at 327.

Moreover, the court may dismiss a complaint pursuant to 28 U.S.C. § 1915A (b)(1) for failure to state a claim upon which relief may be granted.  Federal Rule 12(b)(6) of the *Federal Rules of Civil Procedure* governs the § 1915A(b)(1) standard for failure to state a claim.  *See Jones v. Bock*, 549 U.S. 199, 215 (2007).

To state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess[ing] enough heft to 'show that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 557 (2007) (alteration incorporated). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678. Similarly, when a successful affirmative defense, such as a statute of limitations, appears on the face of a complaint, a court should dismiss an action for failure to state a claim. *Jones v. Bock*, 549 U.S. at 215.

Courts hold a *pro se* pleading "to a less stringent standard than a pleading drafted by an attorney" and construe it liberally. *Jones v. Fla. Parole Comm'n*, 787 F.3d 1105, 1107 (11th Cir. 2015). However, such pleadings must still allege factual allegations that "raise a right to relief above the speculative level." *Saunders v. Duke,* 766 F.3d 1262, 1266 (11th Cir. 2014) (internal quotation marks omitted).

## II.    PROCEDURAL HISTORY

On February 28, 2019, Campbell filed a lawsuit in this court pursuant to 42 U.S.C. § 1983, alleging violations of his rights under the Constitution or laws of

the United States. *See Campbell v. Williamson.*, No. 19-00354-LSC-SGC ("*Campbell I*"). In an amended complaint there, the plaintiff named as defendants Sheriff Williamson, Dr. Johnny Bates, Nurse Doris Pilkinton, Nurse Brandy Bullock, Jail Administrator Marcus Rutland, and Jail Administrator Michael Williams. *See Campbell I* Docs. 12, 31, 50.[3]

The court entered an Order for Special Report in *Campbell I*, directing the defendants to respond to the allegations in the plaintiff's amended complaint. *See Campbell I* Doc. 18. The order recited the allegations in *Campbell I* as follows:

> In December 2018, Sheriff [Williamson], Jail Administrators Marcus [Rutland] and Mike [Williams], and Nurse Doris [Pilkinton] and Brandy [Bullock] placed the plaintiff in the drunk tank for approximately two weeks. During this time period, they forced the plaintiff to sleep on the floor, over which water was running, and without a mattress. They also had the plaintiff's medical records and were aware the plaintiff had numerous (between 9 and 11) prescription medications for his heart, blood pressure, and diabetic conditions, but they refused to provide the medication and said, "deal with it." For days the plaintiff complained of chest pain, but the defendants simply told him to lay down and never provided him any medication. The plaintiff fell or passed out and hit his head and shoulder on the cell toilet. Jail officials transported him to the hospital, where he remained for eight days and was treated for a heart attack and fluid on his lungs. The plaintiff also suffered a torn rotator cuff from his fall. After the plaintiff's discharge from the hospital, the defendants again placed him in the water-logged cell with no mattress and no medication for three days. The plaintiff filed a written grievance but received no response from any of the defendants.
>
> . . . .

---

[3] Citations to the record in *Campbell I* refer to the document and page numbers assigned in that case, and appear in the following format: *Campbell I* Doc. _ at _.

In July 2019, the plaintiff's tongue "broke out," and his hands and feet were cramping so badly he was crying. The defendants gave him treatment for four days, but it did not remedy the condition. Further, the plaintiff's blood sugar is extremely high, and his hands and feet continue to cramp and sometimes become temporarily paralyzed. The plaintiff's feet are swollen, and he suffers from headaches. Still, the defendants refuse to provide him with his diabetic medication, stating he does not need it.

Finally, the plaintiff asserts the defendants refuse to allow him to be a trustee because he is a sex offender and have informed other inmates he is a sex offender.

*Campbell I* Doc. 18 at 3-4.[4]

All defendants, except for Bullock, filed Special Reports in *Campbell I*.[5] *See* Case No. 19-354 at Docs. 31, 50. The court construed the defendants' Special Reports as motions for summary judgment and allowed Campbell an opportunity to respond. *Id.* at Doc. 59. The motions are now under advisement. *Id.*

On April 12, 2019, the plaintiff initiated the instant lawsuit. (Doc. 1). The initial complaint named as defendants Sheriff Williamson and Investigators Roger Denton, Tyler Evans, and "Tonie." (*Id.* at 2-3). Campbell alleged the defendants would not allow him to make a criminal complaint against his uncle whom he claims set fire to his home. (*Id.* at 4-5). The court twice notified the plaintiff that he failed to set forth his claims adequately and ordered him to amend his

_____

[4] The Order for Special Report required the plaintiff to notify the court within 21 days if it misunderstood or misconstrued his claims. *Campbell I* Doc. 18 at 4. The plaintiff did not do so.

[5] Defendant Bullock has not been served with the complaint. *See Campbell I* Docs. 58, 59.

complaint; in each instance, the court noted it would only consider the claims and allegations set forth in the amended complaint. (Docs. 8, 10). The second amended complaint abandoned the claims against Denton, Evans, and Tonie; instead, it names the present defendants identified in the opening paragraph of this report, asserting claims for deliberate indifference to medical needs, unconstitutional conditions of confinement, and due process violations. (Doc. 16). The factual allegations in the second amended complaint, which is the operative pleading, are set forth below.

## III.   FACTUAL ALLEGATIONS

In April 2018, Campbell was booked into the Colbert County Jail and placed in detox for three days. (Doc. 16 at 14). Jailer "Heith Hawkem"—not named in this lawsuit—told the plaintiff to "quit being a baby, [and] just lay down." (*Id*.). The plaintiff alleges he later experienced a heart attack and stroke. (*Id*.). The State of Mississippi took custody of Campbell. (*Id*.). A jail physician transferred the him to a hospital were medical staff advised him that he had suffered a heart attack and both his lungs were filled with fluid. (*Id*.). Campbell was released to his mother to obtain treatment in Florence, Alabama. (*Id*.).

In December 2018,[6] law enforcement officers arrested the plaintiff at his residence and took him into custody. (Doc. 16 at 7). Campbell has type I diabetes and notified the officers that he was prescribed medications for his medical condition. (*Id*. at 5, 7). An officer advised the plaintiff that the jail nurse "would take care of him." (*Id*. at 7). During his booking into the Colbert County Jail, Campbell notified the nurse and doctor that he was a diabetic, had previously experienced a heart attack, and needed certain medications for his high blood pressure and other medical conditions. (*Id*.). However, medical staff denied the plaintiff his medications, and he experienced "severe pains daily" as a result. (*Id*.). The plaintiff's aunt attempted to provide his prescribed medications, but jail staff would not accept them. (*Id*.).

After Campbell had been in custody for twelve days, his chest began to hurt. (Doc. 16 at 7-8). Jail staff told him to lie down and he would be "fine." (*Id*.). The following day, his chest pain worsened. (*Id*. at 8). When the plaintiff went to the bathroom, he lost consciousness and fell, hitting his head against the commode; Campbell realized he had injured his head and shoulder when he regained consciousness. (*Id*.). The plaintiff notified a jailer and he was taken to Helen Keller Hospital before being transferred to Florence Hospital. (*Id*.). The plaintiff was seen by a cardiologist who had previously treated him. (*Id.*). The cardiologist

---

[6] The plaintiff does not state when he was arrested, but institutional documents in *Campbell I* show he was booked into the jail on December 7, 2018. *Campbell I* Doc. 31-3 at 2.

explained to officers that Campbell's condition was serious and occurred because he was not taking his prescribed medications. (*Id*.). The plaintiff claims his heart was weak and that he possibly suffered a stroke. (*Id*.). The plaintiff remained in the hospital approximately nine days before being transferred back to the Colbert County Jail. (*Id*.).

Campbell contends medical staff at the Colbert County Jail failed to promptly diagnose diabetic inmates, monitor their blood sugar levels, and provide care for injuries and infections. (Doc. 16 at 6-7). The plaintiff further asserts medical staff failed to offer meal plans for diabetic inmates to provide for their nutritional needs. (*Id*. at 7). Campbell's numerous requests to medical staff for his prescribed diabetic medications, including Metformin, were denied. (*Id*.).

The plaintiff also alleges he was subjected to unconstitutional conditions of confinement while left on a concrete floor in the Colbert County Jail. (Doc. 16 at 8). When it rained, water would leak into the jail. (*Id*.). Rain would fall on the plaintiff, leaving him cold and wet even though jail staff and trustees set out buckets. (*Id*. at 8-9). Campbell claims jail officials retaliated against him because he complained about the unconstitutional living conditions and filed a lawsuit regarding the same. (*Id*. at 9).[7] He contends jail officials, including "Jailer Mike,"

---

[7] The plaintiff does not name as defendants the jail staff he claims retaliated against him for complaining about his conditions of confinement. (Doc. 16).

informed other inmates of his sex offender status and pending charges, causing Campbell to suffer threats and abuse by other inmates. (*Id*. at 4, 9).

The plaintiff was transferred to Tuscumbia City Jail in December 2018, where he remained until August 2019. (Doc. 16 at 9, 15). Campbell asserts: (1) wastewater would pour onto the floor of the cells every time the toilets flushed on the women's side of the jail;[8] (2) his feet swelled due to his diabetic condition and being "forced" to walk through "stool waters"; and (3) he suffered a stroke after contracting hepatitis at the jail. (*Id*. at 15-16). The plaintiff also complains that he was a trustee at Tuscumbia City Jail in 2019, but Chub Ricks and Chief Setlift placed him on lockdown due to his status as a sex offender, thereby discriminating against him. (Doc. 16 at 15-16).

Campbell contends his uncle set fire to his home. (Doc. 16 at 12). The plaintiff submitted the affidavits of eight people with knowledge of the matter, but Sheriff Williamson refused to investigate or allow him to file a criminal complaint. (*Id*.).[9] When law enforcement arrested the plaintiff, he requested that they remove individuals from the home, but law enforcement refused because the individuals were informants. (*Id*. at 12). Campbell claims the individuals stole $23,000.00 from the home. (*Id*. at 13). He alleges his aunt was allowed to file a report, but

---

[8] The plaintiff has submitted pictures of what he alleges is wastewater in the jail. (Doc. 17).

[9] Campbell asserts other law enforcement officials failed to investigate his claims or allow him to file a criminal complaint, but he does not name these individuals as defendants or give any description of them. (Doc. 16 at 12).

law enforcement officials would not let her file a report concerning the plaintiff's belongings. (*Id*.).

Attorney John McKvey was appointed to represent Campbell in his criminal proceedings. (Doc. 16 at 9). The plaintiff directed McKvey to file a complaint about the conditions of his confinement at Colbert County Jail and Tuscumbia City Jail, but McKvey refused. (*Id*. at 10). Campbell claims McKvey also had a conflict of interest because he represented an individual regarding a stolen trailer that law enforcement believed the plaintiff stole. (*Id*.). Campbell requested that McKvey withdraw as his attorney, but McKvey continued to represent him. (*Id*.). The plaintiff states he was found guilty of the charges against him and contends McKvey failed to effectively represent him. (*Id*. at 10-11).

## IV. ANALYSIS

### A. <u>Duplicative Claims</u>

The plaintiff has alleged the following claims in *Campbell I* against defendants Williamson, "Jailer Marcus" Rutland, "Jailer Mike" Williams, and Dr. Bates which occurred at the Colbert County Jail and Tuscumbia City Jail between December 2018 and August 2019: (1) inadequate medical treatment for diabetes, heart attack, and fluid-filled lungs; (2) unconstitutional conditions of confinement at the Colbert County Jail; and (3) deliberate indifference to his safety by telling other inmates of his pending charges and status as a sex offender. *Campbell I* Doc.

12. To the extent Campbell asserts the same claims against Williamson, "Jailer Marcus" Rutland, "Jailer Mike" Williams, and Dr. Bates in the instant lawsuit, they are due to be dismissed as duplicative.[10]

As the Eleventh Circuit has noted succinctly, "the general principle is to avoid duplicative litigation." *I.A. Durbin, Inc. v. Jefferson Nat'l Bank*, 793 F.2d 1541, 1551 (11th Cir. 1986) (quoting *Colorado River Water Cons. Dist. v. United States*, 424 U.S. 800, 817 (1976)). Federal trial courts "are afforded broad discretion in determining whether to stay or dismiss litigation in order to avoid duplicating a proceeding already pending . . . ." *Id*. at 1551-52. Accordingly, Campbell's claims against Williamson, Rutland, Williams, and Bates regarding his medical care for diabetes and heart and lung conditions, conditions of confinement at the Colbert County Jail, and deliberate indifference to his safety based on his then-pending charges and status as a sex offender are due to be dismissed as duplicative of his previously filed and currently pending claims in *Campbell I*.

The remainder of this report and recommendation addresses the claims in the second amended complaint which were not asserted in *Campbell I*.

---

[10] The second amended complaint here names John Doe as the physician at the Colbert County Jail. (Doc. 16 at 4). Because plaintiff's allegations are similar to *Campbell I*, the undersigned assumes the plaintiff refers to Dr. Bates as the treating physician at the jail.

**B.**     **<u>Colbert County & Colbert County Commission</u>**

Campbell alleges Colbert County and its Commission are "responsible under state law for properly [maintaining and] funding the jail." (Doc. 16 at 3). Because he does not allege facts suggesting Colbert County or its Commission inadequately funded the Jail, the plaintiff's claim is due to be dismissed.

Neither Colbert County nor its Commission are responsible for the day-to-day operations of the jail. Under Alabama law, "an Alabama Sheriff acts exclusively for the state rather than for the county in operating a county jail." *Turquitt v. Jefferson Cty., Ala.*, 137 F.3d 1285, 1288 (11th Cir. 1998). "Alabama counties have no duties with respect to the daily operation of the county jails and no authority to dictate how the jails are run." *Id*. at 1291. In other words, Alabama local governments are not final policymakers with respect to the operation of county jails. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) ("[O]nly those municipal officials who have final policymaking authority may by their actions subject the government to § 1983 liability.") (internal quotations marks omitted).

Although Colbert County and its Commission are not legally responsible for day-to-day jail operations, they are responsible for "erecting and maintaining jails." *Turquitt*, 137 F.3d at 1289-90. If a county's failure to maintain or fund a jail "constitute[s] deliberate indifference to a substantial risk of serious harm to the

prisoners," it can face § 1983 liability. *Marsh v. Butler Cty., Ala.*, 268 F.3d 1014, 1027 (11th Cir. 2001), *abrogated on other grounds by Twombly*, 550 U.S. 544.

Campbell merely states Colbert County and its Commission are responsible for maintaining and funding the jail. (Doc. 16 at 3). He alleges no facts about the County's budget, its allocation of funds for the jail, or that it intentionally underfunded the jail. Neither has the plaintiff shown a causal connection between the conditions of his confinement and a lack of funding. Without more, Campbell is merely asking the court to hold Colbert County and its Commission liable for the acts of the Sheriff and other jail employees. However, "Alabama counties . . . are not liable under the theory of *respondeat superior* for a sheriff's official acts that are tortious." *McMillian v. Monroe Cty., Ala.*, 520 U.S. 781, 789 (1997); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) ("*Respondeat superior* or vicarious liability will not attach under § 1983."). Accordingly, the plaintiff's claims against Colbert County and the Colbert County Commission are due to be dismissed for failure to state a claim upon which relief can be granted.

## C.   <u>Sheriff Williamson</u>

Campbell alleges Williamson refused to investigate his claim that his uncle set fire to his home and prohibited him from filing a police report. (Doc. 16 at 4). The plaintiff's claims against Williamson fail to state a viable claim for relief and are due to be dismissed.

"By its terms . . . [§ 1983] creates no substantive rights; it merely provides remedies for deprivation of rights established elsewhere." *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). The plaintiff's claims that Williamson failed to investigate his allegation that his uncle committed arson and prohibited him from filing a police report implicates no constitutional right to which he is entitled. Failing to properly investigate a complaint does not rise to the level of a separate constitutional violation. Indeed, Campbell does not enjoy a constitutional right to an investigation of any kind by government officials. *See DeShaney v. Winnebago Cty. Dept. of Soc. Servs.*, 489 U.S. 189, 196 (1989) ("[T]he Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual."). Moreover, "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). Instead, the decision whether to prosecute generally rests entirely in a prosecutor's discretion. *Wayte v. United States*, 470 U.S. 598, 607 (1985).

Based on the foregoing, Campbell's claims against Williamson for failure to investigate are due to be dismissed for failing to state a claim upon which relief can be granted.

### D.    Nurse Darce & Colbert County Medical Supplier

Although Campbell names Nurse Darce as a defendant, he does not allege facts associating this individual with his claim of deliberate indifference to his serious medical needs.  (Doc. 16).[11]  Indeed, the body of the second amended complaint fails to mention Nurse Darce at all.  (*Id.*).

A complaint fails to state a claim when it does not include "enough factual matter (taken as true)" to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555-56 ("Factual allegations must be enough to raise a right to relief above the speculative level," and the complaint "must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action") (quotation marks and citation omitted); *Fullman v. Graddick*, 739 F.2d 553, 556 (11th Cir. 1984) (a complaint must state a cause of action sufficient to "affirmatively show the plaintiff is entitled to relief," since "[i]t is not enough, to indicate merely that the plaintiff has a grievance but sufficient detail must be given so that the defendant, and the Court, can obtain a fair idea of what the plaintiff is complaining, and can see that there is some legal basis for recovery") (citation omitted). Because Campbell does not set forth any factual allegations against Nurse Darce in

---

[11] The undersigned is unsure whether "Nurse Darce" is Nurse Doris Pilkington, whom the plaintiff named as a defendant in *Campbell I*.  Nonetheless, the undersigned will assume for purposes of this report that the two are not the same person.

the second amended complaint, any claim against this defendant is due to be dismissed.

To the extent Campbell alleges Colbert County Medical Supplier employs members of the jail medical staff who were deliberately indifferent to his medical needs, these claims also warrant dismissal. While a corporation providing prison medical services cannot be held liable under § 1983 on the basis of *respondeat superior*, a corporation may be liable if the constitutional violation was the result of the corporation's policy or custom. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Buckner v. Toro*, 116 F.3d 450, 452-53 (11th Cir. 1997) (explaining the *Monell* policy or custom requirement applies to private entities acting in place of a municipality). In other words, a plaintiff must allege the corporation has a policy, practice, or custom which was the moving force behind the deprivation of the plaintiff's constitutional rights. *See Craig v. Floyd Cty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011). To establish a custom, a plaintiff must show a persistent and widespread practice. *See McDowell v. Brown*, 392 F.3d 1283, 1290 (11th Cir. 2004). A custom is a practice that is so settled and permanent that it takes on the force of law. *See Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997).

Campbell only challenges the treatment provided by medical personnel employed by the defendant. He does not identify or challenge any policy or

custom enacted by Colbert County Medical Supplier which resulted in a constitutional violation. Accordingly, his claims against this defendant are subject to dismissal for failure to state a claim.

### E.      Trustee Status

The second amended complaint appears to allege Chief Setlift discriminated against Campbell by prohibiting him from serving as a jail trustee at Tuscumbia City Jail due to his status as a sex offender. (Doc. 16 at 15-16).[12] This claim is due to be dismissed. The plaintiff does not have a constitutionally protected interest in being classified as a jail trustee. "In the state prison context, convicts have no due process right to any classification system beyond that mandated by state law. . . [and] classification is a matter relegated to the discretion of prison officials." *Jones v. Diamond*, 594 F.2d 997, 1015-16 (5th Cir. 1979). Therefore, a change in the level of custody within a prison system does not infringe upon or implicate a liberty interest within the meaning of the Due Process Clause. *See United States v. Williams*, 787 F.2d 1182, 1184 n.3 (7th Cir. 1986). Similarly, Campbell has no due process right to classification as a trustee in the county jail. Accordingly, his claim against Setlift concerning his trustee status is due to be dismissed.

---

[12] The plaintiff also refers to "Chub Ricks" but does not name him as a defendant. (Doc. 16 at 3-4, 15).

**F.      Conditions of Confinement at Tuscumbia City Jail**

Campbell contends he was housed in unsanitary conditions during his confinement at the Tuscumbia City Jail.  Specifically, he claims wastewater would pour into the cells and he was forced to walk through it, which contributed to his feet swelling.  (Doc. 16 at 15-16).  The plaintiff also claims he contracted hepatitis while housed at the jail.  (*Id*. at 15).  Liberally construing the second amended complaint, Campbell appears to allege Chief Setlift and Captain Higginbaugh are responsible for conditions at the Tuscumbia City Jail.  (Doc. 16 at 4).

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."[13]  *Helling v. McKinney*, 509 U.S. 25, 31 (1993).  In order to establish an Eighth Amendment violation, a plaintiff "must prove three elements: (1) a condition of confinement that inflicted unnecessary pain or suffering [constituting cruel and unusual punishment], . . . (2) the defendants['s] 'deliberate

---

[13] It appears Campbell was a pretrial detainee during his incarceration at the Tuscumbia City Jail. "Claims involving the mistreatment of ... pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners." *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996).  However, "the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving ... pretrial detainees." *Cottrell*, 85 F.3d at 1490; *cf. Kingsley v. Hendrickson*, 576 U.S. 389, 396, 97 (2015) (in the context of excessive force, holding a pretrial detainee is required to show only that force used was objectively unreasonable under the Fourteenth Amendment rather than malicious or sadistic under the Eighth Amendment)

indifference' to that condition . . . and (3) causation . . . ." *LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993) (footnotes and internal citation omitted).

Prison conditions amount to cruel and unusual punishment only when they result in "unquestioned and serious deprivation of basic human needs." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). While prison officials must furnish prisoners with "adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of inmates,'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)), the Constitution "does not mandate comfortable prisons," *Rhodes*, 452 U.S. at 349. "[C]onditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes*, 452 U.S. at 347. Therefore, extreme deprivations are required to make out a conditions-of-confinement claim under the Eighth Amendment. *See Chandler v. Crosby*, 379 F.3d 1278, 1298 (11th Cir. 2004).

"To be deliberately indifferent, a prison official must knowingly or recklessly disregard an inmate's basic needs." *LaMarca*, 995 F.2d at 1535. To establish deliberate indifference, "a plaintiff must prove that the official possessed knowledge both of the infirm conditions and of the means to cure that condition, so

that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Id.* at 1535-36 (quotations and citation omitted).

Campbell sufficiently alleges facts against defendants Higginbaugh and Setlift concerning the conditions of confinement at Tuscumbia City Jail. Therefore, the undersigned recommends these defendants be required to respond to these claims.

### G. Attorney John McKvey

Campbell complains his defense counsel, John McKvey, failed to render effective assistance of counsel to him during his criminal proceedings. (Doc. 16 at 9-12). The plaintiff's claims against McKvey are due to be dismissed. Section 1983 provides a remedy for deprivations of federally protected rights only if such claimed deprivations are the result of state action. *See District of Columbia v. Carter*, 409 U.S. 418, 423 (1973). Courts have recognized that Congress, in enacting § 1983, meant to give a remedy to parties deprived of constitutional rights, privileges, and immunities by an official's abuse of his or her discretionary powers. *See Hafer v. Melo*, 502 U.S. 21, 27 (1991). One of the two essential elements in any § 1983 action is that the conduct complained of was committed by a person acting under color of state law. *See Blanton v. Griel Mem'l Psychiatric Hosp.*, 758 F.2d 1540, 1542 (11th Cir. 1985). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have

exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 48 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).

Campbell does not allege McKvey is a state actor. Although a private defendant may be held liable in a § 1983 action if he or she acts in concert with state officials in depriving a plaintiff of constitutional rights, Campbell does not allege a conspiracy existed between McKvey and state officials to obtain relief under § 1983. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 931-32 (1982); *Dennis v. Sparks*, 449 U.S. 24, 27-29 (1980). Accordingly, McKvey is not a proper defendant for purposes of § 1983, and Campbell's claims against him are due to be dismissed for failure to state a claim upon which relief can be granted.

## V.     RECOMMENDATION

For the reasons stated above, the undersigned **RECOMMENDS** the plaintiff's claims be **DISMISSED WITHOUT PREJUDICE**, except for his Fourteenth Amendment conditions of confinement claims against Higginbaugh and Setlift; these surviving claims should be **REFERRED** to the undersigned for further proceedings. More specifically as to the claims subject to dismissal, the undersigned **RECOMMENDS**:

1.     The plaintiff's claims against defendants Williamson, "Jailer Marcus" Rutland, "Jailer Mike" Williams, and Dr. Bates regarding his medical care for

diabetes and heart and lung conditions, conditions of confinement at the Colbert County Jail, and deliberate indifference to safety due to his status as a sex offender be **DISMISSED** as **DUPLICATIVE** of his claims in *Campbell I*;

2. The plaintiff's remaining federal claims against the defendants be **DISMISSED WITHOUT PREJUDICE**, pursuant to 28 U.S.C. § 1915A(b)(1), for failing to state a claim upon which relief can be granted; and

3. The plaintiff's state law claims for legal malpractice against defendant McKvey be **DISMISSED WITHOUT PREJUDICE**.

## VI.    NOTICE OF RIGHT TO OBJECT

The plaintiff may file specific written objections to this report and recommendation. The plaintiff must file any objections with the Clerk of Court within fourteen (14) calendar days from the date the report and recommendation is entered. Objections should specifically identify all findings of fact and recommendations to which objection is made and the specific basis for objecting. Objections also should specifically identify all claims contained in the complaint that the report and recommendation fails to address. Objections should not contain new allegations, present additional evidence, or repeat legal arguments.

Failing to object to factual and legal conclusions contained in the magistrate judge's findings or recommendations waives the right to challenge on appeal those same conclusions adopted in the district court's order. In the absence of a proper

objection, however, the court may review on appeal for plain error the unobjected to factual and legal conclusions if necessary in the interests of justice. 11th Cir. R. 3-1.

On receipt of objections, a United States District Judge will review *de novo* those portions of the report and recommendation to which specific objection is made and may accept, reject, or modify in whole or in part, the undersigned's findings of fact and recommendations. The district judge also may refer this action back to the undersigned with instructions for further proceedings.

The plaintiff may not appeal the magistrate judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. The plaintiff may only appeal from a final judgment entered by a district judge.

**DONE** this 10th day of June, 2021.

STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE